**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 1:22-CR-21** |
| | ) | **JUDGE JONES** |
| **GUY BENJAMIN BOWMAN** | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

Comes now the United States of America, by and through undersigned counsel, and files this sentencing memorandum for the Court's consideration in the above-referenced matter scheduled for sentencing on November 28, 2022.

**Statement of the Case**

*Summary of the Facts*

A summary of the defendant's offense conduct is contained in the Presentence Report ("PSR").[1]  (ECF Doc. 190, PSR, Sealed Document, at ¶¶ 5-16.)   In brief summary, the defendant trafficked a large quantity of crystal ice methamphetamine into Southwest Virginia from California over a sixteen-month period.  (*Id*.)  Following the execution of federal search warrants on March 22, 2022, the defendant admitted he shipped approximately 150 to 200 pounds of crystal ice methamphetamine to Virginia during that time.  (*Id.* at ¶ 11.)  He also admitted he had recently transported approximately 20 pounds of crystal ice methamphetamine from California to Virginia in the spare tire of his vehicle; approximately 453.6 grams of crystal ice methamphetamine, $7,108 in U.S. currency, and paraphernalia related to drug distribution were recovered during the search

---

[1] The United States expects to utilize the PSR as an exhibit at the sentencing hearing.  The final PSR is filed with the Court under seal as ECF Doc. 190.

1

warrant executions.  (*Id.* at ¶¶ 7-11, 13, 15.)  Bowman also told law enforcement he was "good at what [he] does," "connected to the Sinaloa cartel," and that he "sold drugs for a living."  (*Id.* at ¶¶ 10, 12.)  He further admitted that the money recovered from him during the search warrant execution was money he owed to the Sinaloa cartel.  (*Id.* at ¶ 11.)  Bowman also identified persons to whom he distributed large quantities of crystal ice methamphetamine in southwest Virginia.  (*Id.*)  Following his arrest, Bowman continued to organize drug-related activities through his co-defendant, Sally Carr.  (*Id.* at ¶ 14.)  In recorded jail conversations between Bowman and Carr, Bowman instructed Carr to collect monies from various persons who owed him money for drugs.  (*Id.*)

The PSR holds Bowman accountable for a total drug weight of more than 45 kilograms of methamphetamine, based upon the results of the search warrant executions, Bowman's statements to law enforcement, and other evidence uncovered during the investigation.  (*Id.* at ¶ 16.)  The Drug Enforcement Administration Mid-Atlantic Laboratory conducted a chemical analysis of the methamphetamine seized during the search warrant execution and determined it "to have a purity of more than 98%, classifying this substance as actual or 'Ice' methamphetamine, because the purity was greater than 80%."  (*Id.*)

### *The Presentence Report*

The defendant stands convicted of both counts from the indictment:  Count 1, Conspiracy to Possess with Intent to Distribute and Distribute 500 grams or more of Methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846(b)(1)(A)(viii), which carries a mandatory minimum penalty of 10 years' imprisonment and up to life, a $10,000,000 fine, supervised release of at least 5 years, and a $100 mandatory assessment; and Count 2, Distribution or Possession with

Intent to Distribute 500 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).  (ECF Doc. 190, PSR, at ¶¶ 2, 147, 150, 154, 157-159.)

The PSR utilized the 2021 Guidelines Manual to determine the defendant's offense level. (*Id*. at ¶ 20.)  The PSR assigned a base offense level of 38 to the offenses, pursuant to U.S.S.G. § 2D1.1(a)(5) and 2D1.1(c)(1), based upon the quantity of methamphetamine for which the defendant was held accountable.  (*Id.* at ¶¶ 16, 22.)  No adjustments or enhancements were made to the base offense level, resulting in a total offense level of 38.  (*Id.* at ¶¶ 23-30.)  Of significance, the PSR notes that Bowman could possibly be classified as a career offender, based upon his extensive prior criminal history and potential qualifying convictions; however, the probation office was unable to obtain court documents to verify certain prior convictions and did not apply a career offender adjustment.  (*Id.* at ¶ 31.)  Even if Bowman were deemed a career offender, his base offense level would still be higher than the career offender guidelines and would not result in a different total offense level.  (*Id.*)

The PSR determined the defendant's criminal history category to be VI, which corresponds to an imprisonment guidelines range of 360 months to life.  (*Id.* at ¶¶ 33-70, 148.)  The United States agrees that these guidelines calculations are correct and that this is the appropriate guidelines range for this defendant.

### The United States' Sentencing Recommendation

As Section 3553(a) provides, "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of the subsection."  18 U.S.C. § 3553(a).  Those purposes include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct.  18 U.S.C. § 3553(a)(2).

Here, the starting point for the Court's application of § 3553(a) is the advisory guidelines imprisonment range. With a criminal history category of VI and an offense level of 38, the defendant's effective imprisonment guidelines range is 360 months to life.

The Court is instructed to first look at the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Here, the defendant stands convicted of two serious and dangerous offenses: conspiring to distribute or possess with the intent to distribute methamphetamine and distribution of methamphetamine. As described above, the defendant distributed over 45 kilograms of methamphetamine over a sixteen-month period. Methamphetamine recovered from Bowman on March 22, 2022, was determined to have a purity of more than 98%. Methamphetamine is an extremely dangerous and deadly drug, particularly at purity levels such as this, and has significantly impacted Southwest Virginia to great detriment.

As to the defendant's history and characteristics, the defendant has a serious and significant criminal history, spanning from 1978 to 2022. (PSR at ¶¶ 34-126.) He has been arrested or incarcerated every decade of his life, starting with his first arrest as a juvenile at age 12 to these offenses at age 57. (*Id.*) His criminal convictions include many serious offenses, such as burglary, distribution of controlled substances, destruction of property, receipt of stolen property, grand theft from a person, evading arrest, vehicle theft, and battery. (*Id.*) In total, Bowman has incurred approximately 30 convictions as an adult, exclusive of probation revocations, parole violations, or these two federal convictions. (*Id.* at ¶¶ 39-68.) Of his prior convictions, ten are controlled substance offenses, including five for distribution or possession with intent to distribute various controlled substances. (*Id.* at ¶¶ 41, 45, 47-48, 52, 62-64, 66.)

Without question, Bowman's criminal history demonstrates that he has a high risk of recidivism. He has failed to appear in court approximately seven times and failed to report to jail

six times.  (*Id.* at ¶¶ 42-44, 62, 66.)   Bowman has violated prior terms of probation approximately 16 times and incurred six parole violations.  (*Id.* at ¶¶ 42-45, 49, 51, 52, 54, 57-58, 62.)  He currently has three charges pending in California.  (*Id.* at ¶¶ 81-83.)  In addition, the probation office was unable to determine the sentences and/or dispositions for approximately 18 additional charges.  (*Id.* at ¶¶ 84-126.)  As noted in the PSR, Bowman could possibly be a career offender, based upon several prior convictions (*id.* at ¶¶ 31, 62, 64, 66), but the probation office was unable to verify the offense details.  Regardless of that classification, Bowman's prior criminal history demonstrates he has engaged in a lifetime of serious and significant crime for which prior periods of incarceration, probation, and parole have had no deterrent effect on his continued criminal conduct.

Without question, the nature and circumstances of this offense are extremely serious and demonstrate that the defendant's conduct continued to pose a danger to the community until his arrest on March 22, 2022.  The Court is well-aware of the extent of the methamphetamine problem in southwest Virginia and the collateral effects this drug has caused throughout the region. Furthermore, the defendant's criminal history demonstrates he presents a danger to the community and that he has a high risk of recidivism.  These concerns are heightened because prior convictions, incarceration, probation, and parole did not serve as a deterrent to the defendant's continued criminal conduct.  Bowman's criminal history demonstrates that nothing but an extended incarceration will deter his criminal conduct.  All of these factors indicate that a significant period of incarceration is appropriate in this case.

Section 3553(a) next instructs the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.  The sentence should also afford adequate deterrence to criminal conduct and

5

protect the public from further crimes of the defendant. 18 U.S.C. §§ 3553(a)(2)(A), (B), (C). Regarding the seriousness of the offense, as detailed above, the defendant's offense conduct was serious and dangerous, based largely upon the quantity of methamphetamine he transported and distributed in Virginia.

As to affording adequate deterrence, the Court must look at deterring not only the defendant from willful violation of the law but must also impose a sentence that serves as a general deterrent to the public. The distribution of dangerous drugs like methamphetamine is an extremely serious offense and seriously endangers the public. Furthermore, the distribution of methamphetamine necessarily endangers the public by furthering the substance abuse, and crimes that accompany addiction. Accordingly, the need for general and specific deterrence is great and is a strong consideration.

A sufficient sentence must also be imposed in this case to afford adequate specific deterrence to criminal conduct and protect the public from further crimes of this defendant, as he is a high risk for recidivism. The defendant's continued criminal conduct also demonstrates that prior charges, convictions, and brief periods of incarceration or supervised probation did not deter his conduct. Thus, specific deterrence and the protection of the public is an even greater consideration here.

The United States vigorously opposes the defendant's motion for a downward departure or variance, for all the reasons stated herein. (ECF No. 189, Def. Mot. Downward Departure.) There is no mitigating factor that would warrant the significant guidelines departure suggested by the defendant, and certainly not a departure of nearly 70% from the low end of the guidelines. (*Id.* at 5-6.) The motion suggests a departure to the mandatory minimum term of imprisonment of 120 months would be a sufficient sentence, given his current age of 57 and anticipated release

from prison at age 66, and suggests he would no longer be a threat at that age. (*Id.* at 6.) As described above, Bowman's age has had absolutely no deterrent effect on his criminal conduct over the past 45 years. Further, the defendant has presented no evidence to support his suggestion that he would discontinue criminal conduct. Rather, his lifetime of crime demonstrates the contrary—that he poses a high risk of recidivism at any age.

In sum, due to the significant danger to the community Bowman poses and his high risk of recidivism, along with the serious nature of this offense and large quantity of crystal ice methamphetamine involved, the United States believes that a significant sentence of imprisonment is necessary to promote respect for the law and ensure public safety. Accordingly, after careful consideration of the above-referenced factors and 18 U.S.C. § 3553(a) as they relate to this case, the United States submits that a sentence within the advisory guidelines range of 360 months to life is the appropriate sentence.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

By: s/*M. Suzanne Kerney-Quillen*
M. Suzanne Kerney-Quillen
Special Assistant United States Attorney
Virginia Bar No. 66633
United States Attorney's Office
180 West Main Street, Suite B19
Abingdon, Virginia 24210
276-628-4161
276-628-7399
Suzanne.Kerney-Quillen@usdoj.gov
USAVAW.ECFAbingdon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2022, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/*M. Suzanne Kerney-Quillen*
M. Suzanne Kerney-Quillen
Special Assistant U.S. Attorney